UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **MICHAEL BERK,** § | |
| § | |
| **PLAINTIFF,** § | |
| § | |
| V. § | |
| § | **CASE NO. 3:18-CV-1349-M-BK** |
| **EXECUTIVE OFFICE OF UNITED** § | |
| **STATES ATTORNEYS,** § | |
| § | |
| **DEFENDANT,** § | |
| § | |
| V. § | |
| § | |
| **UNITED STATES DEPARTMENT OF** § | |
| **HOMELAND SECURITY, ET AL.,** § | |
| § | |
| **DEFENDANTS.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the United States magistrate judge for pretrial management. The cause is currently before the Court on the parties' cross-motions for summary judgment. Doc. 66; Doc. 67. For the reasons that follow, Defendants' *Motion for Summary Judgment* should be **GRANTED**, and Plaintiff's *Motion for Partial Summary Judgment* should be **DENIED**.

**I.   BACKGROUND**

This case stems from Plaintiff's Freedom of Information Act ("FOIA") requests served on (1) the Executive Office for United States Attorneys ("EOUSA"); (2) the United States Secret Service, which is a component of the Department of Homeland Security ("DHS"); and (3) the

Federal Bureau of Prisons ("BOP"). When Plaintiff came to believe that the agencies were not timely responding to his FOIA requests, he filed three counseled civil actions, which have since been consolidated. *See* Doc. 1. Plaintiff has now filed a motion for partial summary judgment against EOUSA, Defendants have jointly cross-moved for summary judgment, and the motions are ripe for consideration.[1]

## II.   APPLICABLE LAW

In general, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The FOIA was enacted to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Thus, in the FOIA context, the traditional summary judgment standard is modified because "the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released." *Cooper Cameron Corp. v. U.S. Dep't of Labor, OSHA*, 280 F.3d 539, 543 (5th Cir. 2002) (emphasis in original).

To meet its summary judgment burden, the agency must establish that: (1) its search for the requested material was adequate; and (2) any withheld material is exempt from disclosure.

---

[1] Plaintiff was represented by counsel at the time his motion for partial summary judgment was filed. However, despite being given multiple extensions of time, Plaintiff, now *pro se*, did not timely respond to Defendants' motion by the Court's October 29, 2020 deadline. *See* Doc. 83. Instead, in a filing postmarked January 4, 2021, Plaintiff submitted a *Motion for Leave to File Plaintiff's Response to Motion for Summary Judgment*, Doc. 88, together with a 54-page brief. Plaintiff's motion for leave and his *Motion to Change Venue*, Doc. 89, were both denied on this date. Nevertheless, the Court carefully reviewed Plaintiff's proposed response, and it revealed no competent evidence to contradict Defendants' arguments as to either the adequacy of their FOIA searches or the applicability of the claimed exemptions.

*Id.* As to the first prong, an agency may demonstrate that it conducted an adequate search by showing that it "performed a search reasonably calculated to yield responsive documents." *Batton*, 598 F.3d at 176. Typically, the agency renders this explanation in an affidavit although a conclusory or vague affidavit is insufficient even if the FOIA requester has not controverted the assertions. *Cooper Cameron*, 280 F.3d at 543. (citation omitted). Once the agency meets its burden, the burden shifts to the plaintiff to introduce "evidence that creates a genuine dispute as to the adequacy of the search." *Negley v. F.B.I.*, 589 F. App'x 726, 730 (5th Cir. 2014) (citing *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979)).

When an agency withholds information, the agency bears the burden to establish that the information is exempt from disclosure. 5 U.S.C. § 552(a)(4)(B). Exemptions from disclosure are limited by statute and should be construed narrowly. *Rose*, 425 U.S. at 361. A court "generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions." *Cooper Cameron,* 280 F.3d at 543. This explanation is often made in affidavit form, which will suffice as long as the assertions are not conclusory, sweeping, or vague. *Id.*

### III. PARTIES' ARGUMENTS AND ANALYSIS

*A. Plaintiff's Motion for Partial Summary Judgment Against EOUSA*

Plaintiff moves the Court for partial summary judgment, arguing that EOUSA did not have a "reasonable basis in law" for failing to comply with FOIA's requirement that the agency respond to his request within 20 business days. Doc. 66 at 2-4. In particular, Plaintiff points to the April 2019 release of 309 pages of public records, noting that "it is impossible to imagine

3

that any legal basis might even have been contemplated for withholding these publicly-available documents from Plaintiff" for two years. Doc. 66 at 6.

Although EOUSA raises additional arguments in opposition to Plaintiff's motion, the first is clearly dispositive.[2] Namely, EOUSA asserts that because it has completed its release of documents in response to Plaintiff's FOIA request, his timeliness argument is moot. Doc. 72 at 15-16.

Injunctive relief is the only remedy the FOIA provides for an agency's improper withholding of records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139, 150 (1980); *see* 5 U.S.C. § 552(a)(4)(B) (providing that a federal district court may enjoin an agency "from withholding agency records and . . . order the production of any agency records improperly withheld."). If a claimant challenges the timeliness of the agency's response, that issue is rendered moot once the agency establishes that it has released all responsive records. *See Voinche v. FBI*, 999 F.2d 962, 963 (5th Cir. 1993) ("Insofar as [the plaintiff] challenged the tardiness of the FBI's response, his claim was rendered moot by the FBI's response to his request.").

Here, EOUSA attorney-advisor Theodore B. Smith states in his declaration that EOUSA has produced to Plaintiff all responsive documents or portions thereof to the extent they are not subject to FOIA exemptions. Doc. 74-4 at 165. In analyzing the affidavits and declarations submitted by a government agency, the agency is entitled to a "presumption of legitimacy" unless there is evidence of bad faith in the agency's handling of a FOIA request. *Batton*, 598

---

[2] EOUSA's argument that it conducted an adequate search and properly produced, withheld, or redacted responsive documents will be addressed *infra*, in the context of Defendants' summary judgment motion.

4

F.3d at 176. There is no such evidence in this case. Indeed, counsel represents that EOUSA recently sent him "a Final Release letter" along with "a very large number of documents . . . which counsel for Plaintiff has not been able to pick up yet." Doc. 66 at 2. Accordingly, Smith's assertion that EOUSA has produced all responsive documents or portions thereof is presumptively legitimate, and Plaintiff's timeliness claim is moot. *Batton*, 598 F.3d at 176.

    B.  *EOUSA's Motion for Summary Judgment*

In support of the EOUSA's summary judgment motion, Smith avers the following in his declaration: On May 11, 2017, Plaintiff submitted a FOIA request to EOUSA, seeking "[a]ll information requested in attached Supporting Files." Doc. 74-4 at 199. Three files were attached to the request. Doc. 74-4 at 200-06. The first was a copy of an April 2017 email exchange captioned "Berk Prosecution File" between Plaintiff's counsel and then-AUSA in Maine, Halsey B. Frank, in which (1) Plaintiff's counsel requested "a copy of the entire prosecution file in this case, including all exculpatory evidence" and (2) Frank declined and referred counsel to the FOIA process. Doc. 74-4 at 200-01.

The second document was headed "Additional FOIA Request Detail," which essentially sought all information, communications, documents, statements and the like, in any format, that related to or referenced Plaintiff. Doc. 74-4 at 203. The third document was a letter from Plaintiff to his attorney containing extensive instructions and descriptions of the records Plaintiff wanted. Doc. 74-4 at 204-05.

Less than two weeks later after receipt of Plaintiff's request, EOUSA informed him that it had been assigned to the agency's "complex track" and asked him to narrow the scope. Doc. 74-4 at 158; Doc. 74-4 at 207-09. In the meantime, EOUSA contacted the U.S. Attorney's

5

Office ("USAO") for the District of Maine, where Plaintiff had been convicted, and began responding to Plaintiff's request on a rolling basis. The truncated timeline surrounding EOUSA's response is as follows:

- In June 2017, the EOUSA attorney requested that the USAO search for and submit all its records relating to Plaintiff. Doc. 74-4 at 157.

- In November 2017, the USAO uploaded 57 pages of records. Doc. 74-4 at 157. Due to the EOUSA attorney's heavy caseload, Plaintiff's FOIA request was reassigned twice.[3] Doc. 74-4 at 157-58.

- In March 2018, the USAO uploaded an additional 1,420 pages of records, which an EOUSA paralegal began to review. Doc. 74-4 at 158-59.

- EOUSA's paralegal completed review of the records by November 2018. Doc. 74-4 at 159. Two FOIA attorneys' departures and a five-week government shutdown led to delays in further processing Plaintiff's request. Doc. 74-4 at 159.

- In April 2019, Plaintiff's FOIA request was reassigned to Smith, who released 309 unredacted pages two days later. Doc. 74-4 at 160; Doc. 74-4 at 221.

- The following day, Smith urged Plaintiff to narrow or prioritize his requests given EOUSA's caseload. Doc. 74-4 at 224, 226. Plaintiff's counsel responded with a list of items which included Government trial "Exhibit 17, together with all CDs referenced therein." Doc. 74-4 at 161; Doc. 74-4 at 223-24.

- That same month, Smith produced a redacted version of Exhibit 17B and, in May 2019, released a redacted copy of Exhibit 17C. Doc. 74-4 at 162; Doc. 74-4 at 228, 230.

- For the remainder of 2019, the parties attempted to settle the case during which time Smith did not release further records. Doc. 74-4 at 163-64.

- By late February 2020, Smith had reviewed all remaining records and made a final release, consisting of approximately 372 pages in full and 199 redacted pages. Doc. 74-4 at 165-66; Doc. 74-4 at 234-35. Smith withheld (1) less than 100 pages of duplicative records; (2) nearly 500 pages of records in full pursuant to various FOIA exemptions; (3) 34 of the 43

---

[3] Smith avers that EOUSA's FOIA staff — generally composed of ten to 12 attorneys and 14-15 support staff — handles a large docket. Doc. 74-4 at 154. Between January 2017 and October 2019, Smith asserts that EOUSA received 12,796 requests or referrals and processed and closed 9,281. Doc. 74-4 at 154. As of March 2020, EOUSA had a pending caseload of more than 2,200 requests or referrals. Doc. 74-4 at 154.

files on Exhibit 17C; and (4) Exhibits 17D and 17E, which appeared to be 95 percent unintelligible and otherwise contained third-party emails.  Doc. 74-4 at 234-36.

The EOUSA first argues that the evidence demonstrates that it conducted a reasonable search.  Doc. 68 at 37.  Upon consideration of the record evidence summarized above and more thoroughly outlined in Smith's declaration, the Court finds that the EOUSA has demonstrated that it "performed a search reasonably calculated to yield responsive documents."  *Batton*, 598 F.3d at 176.  Plaintiff has not presented any evidence to the contrary.  *Negley*, 589 F. App'x at 730 (citation omitted).

The EOUSA next argues that it properly withheld exempt material from disclosure. While the Court will not undertake to discuss each record in detail, the withheld documents or portions thereof can be categorized as follows:  (1) Plaintiff's criminal trial Exhibits 17A-17E, consisting of five CDs; (2) Plaintiff's pretrial services report and a draft Sentencing Guidelines worksheet; (3) notes, emails, and memoranda written by and shared among USAO personnel, Department of Justice attorneys, investigators, and state prosecutors; (4) documents containing the identifying or otherwise highly personal information of child exploitation victims, third parties, and non-supervisory and/or non-attorney employees of the USAO; (5) signatures of attorneys and direct dial phone numbers of a prosecutor; (6) National Center for Missing and Exploited Children Child Victim Identification Reports; (7) law enforcement reports summarizing events surrounding Plaintiff's arrest, including information provided by third parties; (8) text and computer files containing private and/or sexual conversations; and (9) grand jury testimony.  Doc. 68 at 40-52.

The EOUSA withheld these categories of documents based on a variety of FOIA exemptions, namely Exemptions 3, 5, 6, and 7(C)-(F).  Each will be addressed in turn.

> Exemption 3 permits agencies to withhold information specifically exempted from disclosure by statute if that statute mandates that the matters be withheld from the public, establishes particular criteria for withholding, or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

The EOUSA argues that this exemption applies to Plaintiff's pretrial services report and grand jury testimony transcripts. Doc. 68 at 40, 49. The Court concurs. *See* 18 U.S.C. § 3153(c)(1-2) (providing that, with limited exceptions not applicable here, "information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential."); *Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (noting "secret aspect" of grand jury testimony).

> Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption permits the categorical exemption of attorney work product. *F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 27 (1983).

EOUSA permissively withheld numerous documents on this basis. *See, e.g.*, Doc. 68 at 41-42 (communications among various federal prosecutors regarding sentencing and appellate issues, orders, oral argument, etc.); Doc. 68 at 44-45 (prosecutor's notes made in preparation for various hearings).

> Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(B)(6); *see U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599-602 (1982) (stating that "the primary concern of Congress in drafting Exemption [6] was to provide for the confidentiality of personal matters").

When an agency relies on exemption 6 to prevent disclosure of personal information, the privacy interest in the FOIA analysis belongs to the individual, not the agency that has the information. *U.S. Dep't of Justice v. Reporter's Comm.*, 489 U.S. 749, 763-65 (1989). Thus, only

8

the individual whose informational privacy interests are protected by exemption 6 can waive those interests "when they are threatened by an FOIA request." *Sherman v. U.S. Dept. of Army*, 244 F.3d 357, 363-64 (5th Cir. 2001).

Upon consideration, the Court agrees with EOUSA's argument that it correctly relied on this exemption to redact (1) numerous documents based on this exemption to exclude information such as the names and identifying information of child exploitation victims, third parties, witnesses, and non-supervisory and non-attorney USAO personnel; and (2) government trial exhibits consisting of computer files containing photographs and highly personal — often sexual — emails involving third parties as well as identifying information in third parties' email account records.[4]  *See, e.g.*, Doc. 68 at 40, 42, 45, 49-52.

The latter category warrants a brief discussion.  "Under [the] public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (citations omitted).  "Therefore, until destroyed or placed under seal, tapes played in open court and admitted into evidence . . . remain a part of the public domain." *Id.*

> Here, while the government may have presented Exhibit 17, or portions thereof, at Plaintiff's public criminal trial, Smith states in his uncontested Declaration that he and another EOUSA attorney were informed that "the exhibits are no longer available to the public as part of the trial record, and the trial court relinquished custody of those exhibits back to the USAO," rendering them subject to FOIA privacy exemptions. Doc. 74-4 at 162-63. A review of the Maine criminal court docket sheet confirms as much. *See United States v. Berk*, No. 2:08-CR-00212-GZS (dkt. entry dated Feb. 14, 2012) ("EXHIBITS as to MICHAEL A BERK Returned to [AUSA] Halsey Frank via mail run and hand delivered to Neale Duffett. Court exhibits destroyed."). Accordingly, these trial exhibits are subject to FOIA protection. *Cottone*, 193 F.3d at 554.Exemption 7(C) prohibits the

---

[4] Some of this material was withheld under more than one exemption and will be separately addressed in the alternative, *infra*.

9

disclosure of records compiled for law enforcement purposes if production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(7)(C). When a request seeks no "official information" about a government agency, but merely records that the agency happens to have, the invasion of privacy is "unwarranted." *Reporters Comm. for Freedom of Press*, 489 U.S. at 778-80.

EOUSA maintains that it withheld or redacted numerous documents based on this exemption, such as: (1) third party email user account records; (2) names and identifying information of victims of child exploitation, third parties, and witnesses; (3) government trial exhibits consisting of computer files containing photographs and emails involving third parties; and (4) child victim identification reports. Doc. 68 at 40, 42, 45, 49-52. Upon consideration, the Court agrees with EOUSA's assessment that this information was properly withheld as Plaintiff has failed to demonstrate what interest *the public* has in the disclosure of the information. *Reporters Comm. for Freedom of Press*, 489 U.S. at 778-80.

> Exemption 7(D) permits nondisclosure of agency records compiled by law enforcement in the course of a criminal investigation if release of the records "could reasonably be expected to disclose" the identity of, or information provided by, a "confidential source." 5 U.S.C. § 552(b)(7)(D). The question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source believed the communication would remain confidential. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172, 179 (1993) (noting that it is reasonable to infer that paid informants expect their cooperation with law enforcement to be kept confidential).

EOUSA asserts, and the undersigned agrees, that it properly withheld documents on the basis of this exemption, namely a child victim identification report and documents that contain the identity of witnesses who provided information that led to Plaintiff's arrest. Doc. 68 at 46, 48.

> Exemption (7)(E) permits agencies to withhold law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions," or would disclose guidelines for same if "the disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

10

The EOUSA contends that it withheld portions of child victim identification reports pursuant to Exemption 7(E) because, if disclosed, the information "would reveal law enforcement techniques and methodologies in a way that could prejudice future investigations or allow those who exploit children sexually to circumvent the intelligence gathering functions of the National Center for Missing and Exploited Children." Doc. 68 at 47, 49. Additionally, Smith avers that the reports forwarded to the USAO by law enforcement assisted the prosecutor in making investigative and prosecution decisions in Plaintiff's case. Doc. 74-4 at 175-76. Upon review of the pertinent law, evidence, and pleadings, the Court concurs with the EOUSA's assessment.

> Exemption 7(F) protects information compiled for law enforcement purposes that, if released, "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

The EOUSA asserts that it withheld several pages of saved text files introduced into evidence at Plaintiff's trial as they constitute contraband and are interspersed with explicit sexual conversation, which may lead to physical violence or group disruption. Doc. 68 at 47. This rationale is supported by BOP regulations. *See* 28 C.F.R. § 540.14(d) (prohibiting correspondence containing sexually explicit material which, by its nature or content, "poses a threat to an individual's personal safety or security, or to institution good order.").

In view of the evidence presented, the EOUSA has demonstrated that it performed a search reasonably calculated to yield responsive documents and that it properly withheld exempt material from disclosure. Accordingly, the agency is entitled to summary judgment. *See Cooper Cameron*, 280 F.3d at 543.

*C. Secret Service's Motion for Summary Judgment*

DHS has submitted documentary evidence and the declaration of Kevin L. Tyrrell, Supervisory FOIA Officer for the Secret Service, which demonstrates the following:

- In May 2017, Plaintiff submitted a FOIA request for documents pertaining to Plaintiff's criminal prosecution and conviction in the U.S. District Court for the District of Maine. Doc. 74 at 4. Less than a month later, the Secret Service acknowledged receipt of Plaintiff's request. Doc. 74 at 4; Doc. 74 at 31-33.

- The agency's FOIA office then searched for Plaintiff's name in the Field Investigative Reporting System's Investigative Case Management database. Doc. 74 at 5. The Secret Service determined that an investigative file was located in the agency's Portland, Maine Resident Office and sent a search request to that location. Doc. 74 at 5.

- Personnel there searched their hard copy files and, in June 2017, forwarded copies of the requested information to the Secret Service's FOIA unit. Doc. 74 at 5.

- Later that month, the Secret Service advised Plaintiff that it had responsive documents, but there may be some delay in processing due to the number of requests received by that office. Doc. 74 at 4-5; Doc. 74 at 36-37.

- In October 2018, the Secret Service released approximately 115 pages of responsive records and advised Plaintiff of the agency's decision to withhold certain information. Doc. 74 at 7; Doc. 74 at 54-55.

- Plaintiff's attorney at the time then challenged, in this litigation, whether the released records were complete. Doc. 74 at 5.

- The Secret Service thus conducted an additional search of three years' of email messages of two agents involved in Plaintiff's criminal case, using search terms that included Plaintiff's name and case number. Doc. 74 at 7. Additional records were located and forwarded to Secret Service headquarters for processing. Doc. 74 at 7.

- The two agents also searched their own records in a similar manner and one of them forwarded additional records Secret Service headquarters for processing. Doc. 74 at 7-8. On December 12, 2018, the Secret Service provided roughly 358 additional pages of partially redacted records to Plaintiff. Doc. 74 at 8; Doc. 74 at 57-58.

The Secret Service maintains that this evidence demonstrates that it conducted a reasonable search. Doc. 68 at 32. Upon consideration of the record evidence summarized above

and more thoroughly outlined in Tyrrell's declaration, the Court finds that EOUSA has demonstrated that it "performed a search reasonably calculated to yield responsive documents." *Batton*, 598 F.3d at 176. Plaintiff has not presented any evidence to the contrary. *Negley*, 589 F. App'x at 730.

Next, the Secret Service asserts that, pursuant to Exemption 5, it redacted an email message drafted by the AUSA who prosecuted Plaintiff's case discussing trial preparation techniques because the information constitutes attorney work product. The Court agrees with the agency's assessment. *Grolier, Inc.*, 462 U.S. at 27.

Pursuant to Exemptions 6 and 7(C), the Secret Service also withheld the names and other identifying information of its agents and third-party law enforcement personnel because (1) the information did not reveal anything of public interest; and (2) disclosure could result in harassment of the personnel involved. Doc. 68 at 33-34. Again, the Court concurs. *See Reporters Comm. for Freedom of Press*, 489 U.S. at 778-80 (when the request seeks no "official information" about a government agency, invasion of privacy is "unwarranted."). There was also ample basis for the Secret Service's decision to withhold similar information of third parties involved in the case. *See Halloran v. Veterans Admin.*, 874 F.2d 315, 320-21 (applying Exemption 7(C) and holding that individuals who are not subjects of an investigation may nonetheless have their privacy invaded if information about them is revealed).

Lastly, the Secret Service argues that, based on Exemption 7(E), it properly withheld internal agency information including law enforcement personnel identification numbers, operational asset information, and a Secret Service FedEx account number. Doc. 68 at 34-35. The agency maintains that the information relates to certain investigative techniques and procedures it

13

uses, and its release could benefit parties who wish to engage in illegal activity such as creating false badges or personally using the agency's FedEx account. Doc. 74 at 14.

The Court finds this explanation to be reasonable. *See, e.g.*, *Highland Cap. Mgmt., LP v. Internal Rev. Serv.*, 408 F.Supp.3d 789, 817-18 (N.D. Tex. 2019) (holding exempt under 7(E) an invitation to participate in a conference call and the conference line access number because release could result in eavesdroppers hearing law enforcement discussions); *Bradley v. Internal Rev. Serv.*, No. 5:17-CV-737-DAE, 2019 WL 4980459, at *7 (W.D. Tex. Aug. 5, 2019) (holding exempt under 7(E) the electronic PIN number on plaintiff's tax return because disclosure would increase the risk of identity theft). In view of the evidence presented, the Secret Service has demonstrated that it performed a search reasonably calculated to yield responsive documents and that it properly withheld exempt material from disclosure. Accordingly, the agency is entitled to summary judgment. *See Cooper Cameron*, 280 F.3d at 543.

   *D. BOP's Motion for Summary Judgment*

The BOP has submitted documentary evidence and the declaration of BOP Government Information Specialist Kara Christenson in support of its summary judgment motion which demonstrates the following:

- In May 2017, Plaintiff submitted a FOIA request seeking all non-public records that referenced him.[5] Doc. 74-4 at 68, 83-97. BOP staff determined that the requested records were maintained at FCI Seagoville and forwarded the request to the appropriate Regional Counsel's Office for processing. Doc. 74-4 at 68.

- Personnel there searched a FOIA database and found 197 pages of responsive documents. Doc. 74-4 at 69.

---

[5] His then attorney later clarified that he did not want Plaintiff's medical file. Doc. 74-4 at 69; Doc. 74-4 at 89.

14

- In September 2017, BOP counsel informed Plaintiff that 51 pages were appropriate for release in full, 97 redacted pages were releasable, and 49 pages were not appropriate for release. Doc. 74-4 at 69; Doc. 74-4 at 94-96. The releasable documents were included with the letter. Doc. 74-4 at 69; Doc. 74-4 at 94.

The BOP asserts that, pursuant to Exemptions 6 and 7(C), it properly withheld (1) BOP staff names or initials and titles; (2) other inmates' names, register numbers, and assignments; and (3) outside individuals' names, phone numbers and extensions, email addresses, home addresses, birthdates, social security and driver's license numbers, race information, and passport numbers. Doc. 68 at 36. Upon consideration of BOP's arguments and the case law, the Court concurs that disclosure of this information would result in an unwarranted invasion of personal privacy. *Reporters Comm. for Freedom of Press*, 489 U.S. at 778-80; *Washington Post Co.*, 456 U.S. at 599-602.

Additionally, pursuant to Exemptions 7(E), the BOP withheld information pertaining to (1) how law enforcement obtained information; (2) other inmates' criminal offenses and history; (3) how and why prisoners were assigned living quarters; and (4) details of inmate incidents and gang affiliations. Doc. 68 at 36-37. The nature of these documents makes clear that they would "disclose techniques and procedures for law enforcement investigations or prosecutions," or guidelines therefore, which "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Finally, pursuant to Exemption 7(F), the BOP withheld Plaintiff's presentence investigation report ("PSR") because it contains his sensitive personal information, and his possession of it could put him at risk of danger from other inmates seeking that information. Doc. 68 at 36-37. The BOP proposes that if Plaintiff wishes to review his PSR, he may request to do so under its procedures. Upon review, the Court concludes that the BOP did not err in withholding Plaintiff's

15

PSR. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624-25 (D.C. Cir. 2006) (holding that "FOIA does not entitle [requester] to have copies of his PSRs" as long as he is "afforded a meaningful opportunity to review his PSRs and to take notes on them" and observing BOP's safety concerns if inmates were permitted to keep their PSRs in their cells).

## VI.  CONCLUSION

For the reasons detailed above, Plaintiff's *Cross-Motion for Partial Summary Judgment*, Doc. 66, should be **DENIED**, Defendants' *Motion for Summary Judgment*, Doc. 67, should be **GRANTED**, and this action should be **DISMISSED WITH PREJUDICE** in its entirety.

**SO RECOMMENDED** on February 2, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).